# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWENDOLYN GREEN, | 1:10-cv-00935-AWI-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.

## FACTUAL BACKGROUND

Plaintiff was born in 1967, completed the ninth grade, and previously worked as a housekeeper, caretaker, janitor, recycling specialist, and a recycling supervisor. (Administrative

Record ("AR") 33, 139.) On November 14, 2005, Plaintiff protectively filed applications for SSI and DIB pursuant to the Act, alleging she became disabled as of October 28, 2004. (AR 118-19, 132.)

**A.     Summary of Medical Evidence**

Plaintiff left her job in October 2004 as a result of chronic back, hip, and leg pain. (AR 132.) From November 2004 through 2006, Plaintiff sought treatment from Dr. Jay H. Yoo at Dr. Yoo's Rehabilitation and Pain Clinic. (Doc. 214-46.) In November 2004, Dr. Yoo recommended that Plaintiff undergo a magnetic resonance imaging ("MRI") scan of her lumbar spine to rule out a neurogenic cause of her pain. (AR 246.) She was recommended to stay "off work" until December 8, 2004, due to severely symptomatic right lumbar radiculopathy. (*Id.*) She was prescribed Elavil and Percocet. (*Id.*)

On November 10, 2004, Plaintiff underwent an MRI that revealed a disc protrusion at L3-4 and L4-5 and facet hypertrophy involving moderate canal stenosis and mild to moderate bilateral foraminal stenosis. (AR 244.) Dr. Yoo also determined that the MRI showed a bulging disc and facet hypertrophy at L5 and S1, resulting in mild to moderate canal stenosis and moderate bilateral foraminal stenosis. Dr. Yoo noted that Plaintiff was having difficulty sleeping and walking, and that one tablet of Percocet "only provides partial pain relief." (AR 244.)

At a January 2005 follow-up examination, Dr. Yoo noted that Plaintiff's chronic low back and right leg pain were "symptomatically improved." (AR 238.) He reported that Plaintiff had started on pool therapy and her right-hip pain had decreased. He also noted that she had stopped taking Elavil and was still sleeping better than previously. (*Id.*) Plaintiff was advised to exercise and watch her calorie intake. (*Id.*)

In February 2005, Plaintiff presented for another follow-up examination with Dr. Yoo where he noted that "[s]he has been gradually feeling better," and "[h]er tolerance has been gradually improving." (AR 237.) He noted "steadily improving" chronic low back and right lower extremity pain secondary to right S1 radiculopathy. (AR 237.) Dr. Yoo recommended that Plaintiff stay on her present medication and continue her home-exercise program. He also noted that her "off work recommendation will be effective until March 18, 2005." (AR 237.)

Plaintiff continued to present for follow-up examinations with Dr. Yoo monthly. In May 2005, Dr. Yoo examined Plaintiff and found that she had mild to moderate tenderness of the left upper gluteal area, but that her right lumbar radicular symptom was mostly resolved. (AR 234.) Dr. Yoo noted that she was considered as "not being able to perform standing more than 30 minutes or lifting more than 25 pounds at a time; thus, he recommended that Plaintiff remain temporarily disabled from her job responsibilities. She was also recommended to undergo a work hardening program to improve her work tolerance and capability. (AR 234.)

By October 2005, Dr. Yoo reported that Plaintiff had "[n]o significant tenderness in both sides of the lower lumbar and upper buttock area and right lateral hip area." (AR 228.) He noted that her myofascial pain syndrome was symptomatically much improved. Plaintiff was recommended to continue with her home exercise program two times per day. (AR 228.) At another examination in December 2005, Dr. Yoo recommended that Plaintiff proceed with a lumbar epidural steroid injection to obtain better pain relief which Plaintiff underwent; she reported good pain relief to Dr. Yoo. (AR 224, 226.) Dr. Yoo noted significant symptomatic relief following the injection and reported that her myofascial pain syndrome was symptomatically decreased. (AR 224.) However, in February 2006, Plaintiff reported that much of the pain that was relieved by the steroid injection had subsequently increased in intensity. (AR 222.) Although Dr. Yoo noted no significant tenderness in her lower lumbar and upper buttock area, she continued to identify this area as the most painful. She was recommended to proceed with a second lumbar epidural steroid injection to obtain better pain relief. (AR 222.) It was recommended that she not return to work until March 13, 2006. (AR 222.)

On March 10, 2006, Plaintiff was examined by Dr. Juliane Tran related to her complaints of back pain and lower extremity numbness. (AR 200.) Plaintiff reported to Dr. Tran that she had been told she had extensive nerve damage in her back and that she was not a candidate for surgery. Plaintiff reported that she was provided therapy between December 2004 to January 2005, but the therapy did not help her. (AR 200.) She reported that she was not currently receiving therapy for her back, but she had undergone an epidural injection in 2006, which relieved her back pain for only two weeks. On examination, Dr. Tran assessed Plaintiff as having a slightly antalgic gait with

3

guarding of the right lower extremity and some guarding of both extremities. (AR 201.) Dr. Tran opined that Plaintiff was restricted in activities involving prolonged standing and walking more than six hours per day and that she would probably need to alternate between sitting and standing. (AR 203.) Dr. Tran also noted that Plaintiff did not need to use an assistive device to ambulate. (AR 203.)

On March 13, 2006, Plaintiff underwent a second epidural injection (AR 294-95), but did not report significant pain relief. (AR 220). Dr. Yoo again noted that there was no significant tenderness of the lower lumbar and right hip area where Plaintiff reported her pain. Dr. Yoo reported that Plaintiff was willing to return to work "despite persistent low back pain of moderate degree." Dr. Yoo reported that Plaintiff was medically cleared to return to work, with a continuing "back precaution." (AR 220.) On examination, Dr. Yoo described Plaintiff to be "in fair spirit, flat affect, and in no distress." (AR 220.)

On March 21, 2006, a state agency physician, Dr. E.A. Fonte, reviewed Plaintiff's medical records and determined that Plaintiff could frequently lift or carry 10 pounds, could occasionally lift or carry 20 pounds, could stand and/or walk at least two hours in an eight-hour day, could sit for a total of about six hours in an eight-hour day, and was unlimited in her ability to push or pull. (AR 204-11.)

In July 2006, Dr. Yoo noted that Plaintiff described her back pain as mildly decreased, but also noted that she had "not been doing much home exercises." (AR 214.) He recommended that she increase her home exercises, including swimming, and that she increase her effort of losing more weight. (AR 214.)

In August 2006, pursuant to a referral from Dr. Yoo, Dr. Afaq Kazi examined Plaintiff. (AR 290-93.) Dr. Kazi summarized his physical examination findings, noting that Plaintiff appeared to be in a "mild amount of distress." (AR 291.) He described her as having a functional range of motion in her cervical spine but tender to palpation at the bilateral upper trapezius area, left greater than right. (AR 291.) As to Plaintiff's lumbar spine, she had a functional range of motion, but forward flexion of the lumbar spine increased her pain. (AR 292.) She had tenderness at the right sacroiliac joint area and decreased sensation in the right lateral leg. (AR 292.) He recommended

4

a diagnostic right L3 selective nerve root block to address the right hip pain and an MRI of the cervical spine. (AR 292.)

On December 1, 2006, Plaintiff was evaluated by Kimball Hawkins, Ph.D. (AR 299-302.) In setting forth the results of Plaintiff's "mental status exam," Dr. Hawkins noted that Plaintiff was "passively cooperative with the testing process" and expressed an uncertainty "at times whether [Plaintiff] is doing her best because of her constant display of pain symptoms." (AR 300.) Dr. Hawkins found that Plaintiff's ability to understand, remember, and carry out simple instructions was adequate, but she needed reminders. Dr. Hawkins described Plaintiff's ability to maintain concentration, attention, and persistence as "poor." (AR 301.) Dr. Hawkins also found that her ability to perform activities within a schedule and maintain regular attendance as well as her ability to complete a normal work day and week without interruptions from psychologically based symptoms was poor. (AR 301.) Dr. Hawkins recommended that Plaintiff receive ongoing medical follow-up, that she receive counseling, and that she receive a referral for pain management. (AR 302.)

On January 12, 2007, state agency consultant Dr. L. Bobba reviewed Plaintiff's medical records and affirmed Dr. Fonte's assessment of Plaintiff's condition – i.e., that Plaintiff was capable of performing simple, repetitive tasks. (AR 323.)

On February 12, 2007, state agency consultant Maryanne Bongiovani, Ph.D. reviewed Plaintiff's medical records and completed a Psychiatric Review Technique worksheet and a Mental Residual Functional Capacity ("RFC") Assessment.[1] (AR 303-20.) Dr. Bongiovani opined that Plaintiff suffered from a "Depressive Disorder, NOS." (AR 306.) She indicated that Plaintiff had mild restriction in activities of daily living, moderate difficulties maintaining social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. (AR 313.) Dr. Bongiovani specifically noted the following:

---

[1] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

> Claimant is only partially credible. She did not appear to be trying at the [compensation examiner] and although she did not show malingering on a memory test, she was only passively cooperative. Claimant has not sought psychological treatment and did not mention taking the Wellbutrin she had been prescribed. She is felt to be depressed because of her situation, but her test results and the recommendations made by the CE doctor were based on only passive cooperation and were thus not felt to be entirely credible. It is felt claimant does have moderate limitations in attention, concentration and persistence, but claimant is able to handle her finances, perform simple non-strenuous tasks, care for herself and watch TV.

(AR 315.) Dr. Bongiovani concluded that Plaintiff has moderate limitations in attention, concentration and persistence, but she is able to understand, remember, and carry out simple instructions with some reminders, and is able to follow a simple routine. (AR 319.)

On March 28, 2007, April 20, 2007, and May 7, 2007, Plaintiff met with therapist Ralph Rogers for an assessment and two therapy sessions, respectively. He assigned Plaintiff a Global Assessment of Functioning ("GAF") of 43 and recommended short-term therapy.[2] (AR 368.) Plaintiff was scheduled for further therapy sessions, but failed to appear at her appointments. (AR 360.)

In July 2007, Plaintiff was examined by Dr. Jose Ibarra who noted that Plaintiff complained of low back, hip, knee, and foot pain since 2004 along with radiation over the right leg and numbness below the knee. His examination of Plaintiff's right leg revealed weakness, mild muscle atrophy, and diminished sensation. (AR 20, 348.)

On August 15, 2007, Plaintiff underwent a cardiovascular evaluation with Michael L. Krueger to whom she presented with complaints of heart palpitations. (AR 343.) Dr. Krueger reported that Plaintiff had a history of hypertension that "appears to have been somewhat difficult to manage given the extent of her current antihypertensives and a blood pressure that is still 130/80." (AR 345.) He noted that she had murmurs associated with mitral and/ or tricuspid insufficiency and some aortic insufficiency. (AR 345.) He recommended an echocardiography to establish any significant structural heart disease. To study her palpitations, Plaintiff under went a Holter Monitor test that yielded abnormal results. (AR 346.) Interpreting the results of the test, Dr. Krueger found that she had a sinus rhythm with infrequent ventricular ectopy. He also reported that "[t]here is an

---

[2] A GAF rating between 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job." DSM -IV-TR 34 (4th ed. 2000).

underlying bundle branch block," and that she has "runs of supraventricular tachycardia up to 7 beats at 146 beats per minute," but described her as "asymptomatic." (AR 338, 346.) Dr. Krueger recommended that Plaintiff increase her dose of Metoprolol and that she return in three weeks for an evaluation of her response to the increased dosage. He also recommended that she return in one year for a repeat echocardiogram. (AR 339.)

On October 29, 2007, Plaintiff met with Dr. Mythili Sundaresan to discuss Plaintiff's back condition. (AR 337.) Dr. Sundaresan did not examine Plaintiff, but reviewed the medical records Plaintiff brought with her to the appointment. (AR 337.) Plaintiff appeared for the appointment in a wheelchair and indicated to Dr. Sundaresan that she is wheelchair bound and that she cannot move her foot. (AR 337.) Dr. Sundaresan found that Plaintiff's 1992 computed tomography ("CAT") scan shows "moderately severe stenosis at L4, L5, and L5, S1 with degenerative disc disease and some amount of facet arthropathy." (AR 337.) Dr. Sundaresan noted that the MRI taken of the lumbosacral area on November 10, 2004, "does not go with the CAT Scan done in 1992." Dr. Sundaresan recommended that Plaintiff be referred to a University Hospital so that she could be "evaluated appropriately." (AR 337.)

In November 2007, Plaintiff was again examined by Dr. Ibarra who indicated that Plaintiff had chronic lower back pain and hip pain treated with Vicodin. He observed that she was not in distress. (AR 20, 336.)

Plaintiff was examined by Dr. J. Luis Bautista on December 18, 2007. (AR 356.) On January 28, 2008, Dr. Bautista completed a questionnaire in which he opined that Plaintiff suffers from disc disease of the lower spine. (AR 357.) He found that Plaintiff could not sit or stand for any period of the day and that her medical problems preclude her from any full-time work at any exertion level. (AR 357.) He also answered "yes" to a question regarding whether Plaintiff has Diabetes Mellitus with neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained loss of gross and dexterous movements. (AR 357.)

**B.   Lay Testimony**

On November 17, 2006, Renee Frazier, Plaintiff's daughter, completed a function report providing observations related to Plaintiff's physical and mental limitations. (AR 170-77.) Ms.

Frazier indicated that Plaintiff's pain causes her to be depressed and frequently she cries, is irritable, and spends all of her time watching television. (AR 170.) Plaintiff is unable to put on her clothing and shoes, to reach or bend back to bathe, to reach over her shoulders to wash her hair, and she "[s]ometimes need[s] help getting on and off the toilet." (AR 171.) Plaintiff is unable to stand for a long period of time, she cannot go out alone, she does not drive a car because she has "a hard time using [her] legs," and she does no shopping. (AR 173.) Further, Plaintiff is depressed because she is unable to go to social events and activities, and her pain causes her to "be depress[ed] and angry with others." (AR 175.) Plaintiff also has difficulty getting along with others, takes "a longer time to understand" spoken instructions, and she does not like changes in her routine "because it will cause her to get angry." (AR 176.)

On November 17, 2006, Plaintiff also completed a function report (which was filled-out by Ms. Frazier) that contains a nearly identical statement of limitations. (AR 178-85.)

**C.    Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration. (AR 79-88.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (AR 25-58.) On February 19, 2008, ALJ Stephen W. Webster held a hearing where Plaintiff testified that she had pain in her neck, across the shoulders, the lower and middle back, left side, right hip down to the right leg, foot, and toe. She stated she could sit for approximately 30 to 45 minutes at one time and could stand for approximately five minutes. She testified that she was prescribed a wheelchair by Dr. Ibarra, and she uses a cane when she must move from the wheelchair. (AR 36-37.)

A vocational expert ("VE") testified that a hypothetical person of the same age, education, and work experience as Plaintiff could not perform Plaintiff's past relevant work if that person could at most lift 20 pounds on occasion and 10 pounds frequently, and could sit, stand and/or walk six hours of an eight-hour work day, but had to be able to sit or stand at will. (AR 47.) Assuming that Plaintiff was limited to simple, routine, repetitive work, and had to use a cane for balance while walking, the VE testified that Plaintiff could perform the sedentary, unskilled jobs of button and notion assembler and ampoule sealer. (AR 50-51.)

On May 1, 2008, the ALJ issued a decision, finding Plaintiff not disabled since March 10, 2006. (AR 25-58.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of November 28, 2004; (2) has an impairment or combination of impairments that is considered "severe" based on the requirements in the Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform her past relevant work; but (5) could perform other work in the national economy. (AR 25-58.) Plaintiff sought review of this decision before the Appeals Council. On March 15, 2010, the Appeals Council denied review. (AR 1-3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. On May 14, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

# REVIEW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

A.  **Contentions of the Parties**

Plaintiff asserts that the ALJ erred in deciding her case by (1) failing to find that Plaintiff's depression and cardiac impairment were severe; (2) incorrectly assessing her RFC by improperly rejecting Dr. Bautista's medical opinion; (3) improperly rejecting Plaintiff's testimony regarding her symptomatology and resulting limitations; and (4) failing to account for the lay testimony provided by Plaintiff's daughter with regard to Plaintiff's symptoms and limitations.

The Commissioner contends that Plaintiff's cardiac and depression conditions were properly assessed by the ALJ, substantial evidence supports the ALJ's RFC determination, the ALJ provided clear and convincing reasons for rejecting Plaintiff's lay testimony, and any failure to assess Plaintiff's daughter's lay testimony was, at most, harmless error.

B.  **Any Error In Considering Plaintiff's Cardiac Impairment Was Harmless**

To be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).[3] In considering whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. *See Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996); *see also*, 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523, 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. Social Security Ruling ("SSR") 85-28.

---

[3] Basic work activities include, but are not limited to: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521, 416.921.

Plaintiff asserts that the ALJ erroneously determined that her cardiac impairment was not medically determinable. (Plaintiff's Brief "Br." at 9.)[4] Even assuming *aruguendo* that this finding was erroneous, the ALJ specifically found that even if Plaintiff's impairment was medically determinable, it was not severe. (AR 15.) The ALJ reasoned that Plaintiff's cardiac impairment was not severe because (1) it was found to be asymptomatic by the cardiac specialist who examined her and administered cardiac testing, (2) there were no evidence of cardiac complaints since October 2007, and (3) Plaintiff's hypertension improved with consistent medication. (AR 15.) Plaintiff asserts that this is a misinterpretation of the medical evidence but does not explain how the ALJ misinterpreted Dr. Krueger's findings. Plaintiff alludes to the fact that the cardiac abnormalities *resulted* in difficult to control hypertension and palpitations (Plaintiff's Br. at 11), but this is not a finding made by Dr. Krueger. Plaintiff presented to Dr. Krueger with complaints of heart palpitations which resulted in a tenderness to her anterior chest. (AR 343.) Dr. Krueger noted that these "palpitations occur typically 'near the end of the day' and do not awaken her from sleep." (AR 343.) Dr. Krueger found that Plaintiff's examination was "consistent with the patient's history of hypertension along with a 4th heart sound." Regardless of whether Plaintiff's cardiac abnormalities caused her hypertension and palpitations or vice versa, Plaintiff has identified no symptoms related to any of these cardiac issues that impacts her ability to do basic work as a result. *See*  20 C.F.R. §§ 404.1521, 416.921 (defining "non-severe" impairment as one which does not significantly limit a claimant's physical or mental "ability to do basic work activities").

The only symptom Plaintiff reported was heart palpitations that the doctor found only occurred on an "intermittent basis." Moreover, the ALJ found that Plaintiff's blood pressure improved with consistently administered medication. (AR 15.) Plaintiff asserts that the ALJ should have considered whether any cardiac condition "caused any limitations, such as physical limitations or a limited ability to tolerate work stress, and included these in his residual functional capacity." (Doc. 16, p. 11.) However, it is not the ALJ's responsibility to develop evidence of limitations that are neither noted in the medical record nor complained of by Plaintiff. Rather, the plaintiff has the

---

[4] Plaintiff's brief contains no page numbers. Page number references correspond to the page number reflected by the ECF document header.

burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. *See* 20 C.F.R. §§ 404.1508, 416.908; *see also Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *see also Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although [claimant] clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'").

Here, there is no evidence that Plaintiff's heart palpitations or hypertension in any manner impacted Plaintiff's ability to perform basic work activities. *Cf. Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("Even on appeal, [claimant] has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis."). Thus, even assuming that the ALJ erred in finding that the cardiac condition was not a medically determinable impairment, there were no limitations noted that indicated that the impairment impacted Plaintiff's ability to perform work activities indicating that the impairment was severe. Therefore, any error at this step was harmless. *See Stout v. Comm'r Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (harmless error if "inconsequential to the ultimate disability determination").

**C.     ALJ's Failure to Consider Third Party Lay Testimony Requires Remand**

Lay testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account, *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), unless he expressly states a reason to disregard such testimony that is specific and germane to that particular witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). A lay person, even though not a vocational or medical expert, is not disqualified from providing his personal observations about how a claimant's condition limits his or her ability to perform basic work activities. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).

Plaintiff's daughter, Renee Frazier, provided testimony about Plaintiff's impairments by completing a Function Report. (AR 170-77.) Ms. Frazier observed that Plaintiff spends most of her time watching television, and her pain causes her to become depressed and irritable. (AR 170). She engages in no social activities because of her physical limitations. (AR 175, 21(d)). Without

assistance, Plaintiff is unable to (1) put on her clothing and shoes, (2) reach for purposes of bathing, and (3) bend; also, she "sometimes needs help getting on and off the toilet." (AR 171.) Plaintiff cannot stand for a long period of time (AR 172), she does not participate in housework because she is "unable to stand, bend, and lift," and her balance is "a little off." Plaintiff has difficulty using her legs and does not drive a car for that reason. (AR 173.) Plaintiff is able to lift approximately two pounds, can walk about 15 to 20 feet without rest, struggles to climb stairs, has difficulty squatting, and is unable to sit for long periods.

The ALJ failed to explicitly consider Ms. Frazier's uncontradicted testimony, and this constitutes error. *Stout*, 454 F.3d at 1053-54. An error in failing to properly discuss competent lay testimony favorable to the claimant may only be found harmless where the reviewing court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

Ms. Frazier's uncontradicted testimony was that Plaintiff's pain causes her to be depressed and angry with others, that she has a difficult time comprehending, and it takes her longer to understand spoken instructions. (AR 175, 21(c), 22(f), (g).)[5] Ms. Frazier also observed that Plaintiff is unable to put on her clothing and shoes, she is unable to bend or reach for purposes of bathing, she cannot reach over her shoulders to style or wash her hair, and she sometimes needs assistance "getting on and off the toilet." (AR 171, 14(a).)

The VE testified that Plaintiff could only perform those jobs where the worker could sit or stand at will. However, Plaintiff's difficulty moving from sitting to standing or standing to sitting positions may further impact her ability to perform the jobs that the VE testified Plaintiff could still

---

[5] The Court notes that the unsworn lay testimony overlooked by the ALJ is directly controverted in several regards by Plaintiff's hearing testimony. Specifically, Ms. Frazier indicates that Plaintiff does not prepare her own meals (AR 172), she does no household chores (AR 172), she does not drive a car (AR 173, 17(d)), and when she goes out, she cannot go out alone (AR 173, 17(c)). During the course of the hearing, Plaintiff testified that she drives herself to doctor appointments when necessary, she does "some shopping," she "prepare[s] small meals[,] like microwave quick stuff," and she folds laundry. (AR 32.) To this extent, Plaintiff herself contradicted some of the lay testimony offered by Ms. Frazier. In *Stout,* the court explicitly noted that the lay testimony the ALJ failed to consider was *uncontroverted*. *Stout*, 454 F.3d at 1056 ("the ALJ articulated no reasons for dismissing the uncontradicted lay testimony indicating Stout needed such supervision to perform even simple tasks"). It incongruous to credit *controverted* third-party statements for purposes of a prejudicial error analysis – especially *unsworn* statements that are materially contradicted by the claimant's *sworn* testimony. The Court will not consider Ms. Frazier's contradicted testimony in considering whether prejudicial error exists. Rather, the Court will consider whether, crediting true any *uncontradicted* lay testimony, a different disability determination could possibly have been reached.

perform. *Cooper v. Sullivan*, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989) (holding vocational expert's testimony must "accurately reflect [] all of the claimant's limitations, including pain").

Further Ms. Frazier stated that Plaintiff's pain "causes her to be depressed, irr[i]table, and crying [sic]." (AR 170.) Ms. Frazier also observed that "[i]t's difficult for [Plaintiff] to get along with other because she's depress[ed]." (AR 177.) If credited as true, this testimony may materially affect the ALJ's determination as to the extent of any functional limitation Plaintiff suffers as a result of her depression. Defendant argues that, even assuming a severe impairment, all limitations associated with Plaintiff's depressive disorder were considered by the ALJ in forming his RFC assessment. Therefore, Defendant contends that any error in considering Plaintiff's depressive condition non-severe was harmless. However, the only limitation discussed by the ALJ with regard to Plaintiff's depression was that Plaintiff could perform only simple tasks with one-step instructions, rather than complex tasks with many-step instructions. The ALJ's RFC assessment did not appear to consider how Plaintiff's irritability, crying, and difficulty getting along with others – as described by Ms. Frazier – would limit her functioning.

As a result of the ALJ's failure to account for this lay testimony, the Court cannot confidently conclude that no reasonable ALJ would have reached a different disability determination. *Stout*, 454 F.3d at 1055-56 (court held it could not conclude that "an ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work was harmless"); s*ee also Robbins*, 466 F.3d at 885 ("[W]e have only found harmless error when it was clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination,'" and "had never found harmless an 'ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work.'" (citing *Stout* 454 F.3d at 1055-56.)). Thus, the matter must be remanded so that the ALJ can consider this lay testimony and whether, if credited, it indicates additional limitations not previously considered.

Plaintiff also alleges that the ALJ erred in assessing Plaintiff's credibility and in weighing Dr. Baustista's opinion. The Court need not consider these arguments in light of the need for reversal on other grounds – particularly because consideration of the lay testimony may impact the ALJ's findings with regard to these additional issues. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299

15

(10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *Byington v. Chater*, 76 F.3d 246, 250-51 (9th Cir. 1996) ("Because we find that the district court committed error and the decision of the ALJ is supported by substantial evidence, we do not consider the Secretary's other arguments on appeal."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

**D.     The Court Finds That Remand Is Required**

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Id.* (alteration in original) (internal quotation marks omitted).

The Court has concluded that the ALJ erred in failing to give germane reasons for rejecting the statement of a lay witness. In these circumstances, it is appropriate to remand this matter for further administrative proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Cf. Benecke*, 379 F.3d at 593; *Harman*, 211 F.3d at 1178. Here, remand is appropriate because the ALJ must properly address the lay witness testimony before a proper disability determination can be made. *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009).

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, RECOMMENDS that the ALJ's decision be reversed and the case be remanded to the ALJ to make additional findings.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     June 9, 2011                             /s/ Sheila K. Oberto
                                        UNITED STATES MAGISTRATE JUDGE